IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED
IN OPEN COURT

FEB 1 5 2022

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Criminal No. 1:22-CR-27 (LO)

UNITED STATES OF AMERICA

v.

DAVID FERNANDO VASQUEZ BEJARANO,

A/K/A "ACELERADO,"

*Defendant.*

**UNDER SEAL**

Count 1:
Conspiracy to Distribute Controlled
Substances
(21 U.S.C. §§ 841(a)(1) and 846)

Count 2:
Conspiracy    to    Distribute    Controlled
Substances Knowing, Intending or Having
Reasonable Cause to Believe they will be
Unlawfully Imported into the United States
(21 U.S.C. §§ 959, 960, 963)

Forfeiture Notice

**INDICTMENT**

February 2022 Term — Alexandria

**COUNT ONE**

*(Conspiracy to Distribute Controlled Substances)*

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

1.      Having determined that "[t]he illegal importation, manufacture, distribution and

possession and improper use of controlled substances have a substantial and detrimental effect on

the health and general welfare of the American people[,]" Congress enacted the Controlled

Substances Act ("CSA"), codified at Title 21, United States Code, Sections 801 *et seq.*

2.      There are five "schedules" of controlled substances, known as Schedule I, II, III, IV, and V.  Substances are "scheduled" depending on their potential for abuse and recognized medical usage.

3.      A drug listed in Schedule I has a high potential for abuse and no currently accepted medical use in treatment in the United States.  A drug listed in Schedule II has a high potential for abuse and may lead to severe psychological or physical dependence; however, a Schedule II drug has a currently accepted medical use in the United States, subject to severe restrictions.  21 U.S.C. § 812, *et seq.*

4.      Heroin is a Schedule I controlled substance.  Title 21, United States Code, Section 812.

5.      Cocaine is a Schedule II controlled substance.  Title 21, United States Code, Section 812.

6.      N-phenyl-N-[1–(2–phenylethyl)–4-piperidinyl] propanamide, commonly referred to as fentanyl, is a Schedule II controlled substance.  Title 21, United States Code, Section 812.

7.      Methamphetamine is a Schedule II controlled substance.  Title 21, United States Code, Section 812.  The amount of actual methamphetamine distributed or possessed with the intent to distribute is determined by that methamphetamine's purity.

8.      Per the CSA, no person may, without authorization, knowingly or intentionally manufacture, distribute or dispense, or possess with the intent to manufacture, distribute or dispense a controlled substance, or conspire or attempt to do the same.  21 U.S.C. §§ 841 & 846. The CSA has extraterritorial application.  Specifically, it reaches acts of distribution and manufacture of Schedule I and II controlled substances, and conspiracies to do the same, that occur outside the United States when such acts are undertaken intending, knowing, or having reasonable

2

cause to believe that such substance or chemical will be unlawfully imported into the United States. 21 U.S.C. §§ 959 & 963.

9.    Loudoun County is located within the Eastern District of Virginia.

### THE CONSPIRACY

10.    Beginning at least in and around December 2019, and continuing thereafter up to and including July 2021, the exact dates being unknown to the Grand Jury, in Loudoun County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant, DAVID FERNANDO VASQUEZ BEJARANO, a/k/a "ACELERADO," ("VASQUEZ") did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others both known and unknown to the Grand Jury, to unlawfully, knowingly, and intentionally distribute controlled substances, to wit, the following:

    a.    One kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance,

    b.    Five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance,

    c.    400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1–(2–phenylethyl)–4-piperidinyl] propanamide, commonly referred to as fentanyl, a Schedule II controlled substance, and

    d.    50 grams or more of methamphetamine (actual), a Schedule II controlled substance.

(All in violation of Title 21, United States Code, Sections 841(a)(1) and 846.)

## OBJECT OF THE CONSPIRACY

11.     The object of the conspiracy was to distribute narcotics originating from Mexico in the United States.  Specifically, the primary purpose was for VASQUEZ to distribute heroin, cocaine, fentanyl, and methamphetamine from Mexico to suppliers in the United States.  It was further an object of the conspiracy for VASQUEZ and his sub-distributors to make money through the sale of these narcotics to further downstream sub-distributors and users in the greater Washington, DC area and elsewhere.  The defendant used the following ways, manners, and means—among others—to carry out this purpose:

## WAYS, MANNER, AND MEANS

12.     It was part of the conspiracy that the defendant and his co-conspirators, both indicted and unindicted, would and did play different roles in the conspiracy.

13.     VASQUEZ, a Sinaloa Cartel member living in Mexico, obtained heroin, cocaine, fentanyl and methamphetamine in Mexico and arranged and oversaw the transportation of these narcotics across the Mexican border into the United States.  VASQUEZ set the price per kilogram of the narcotics being imported into the United States for resale.  VASQUEZ coordinated the return of narcotics proceeds in the form of U.S. currency ("USC") from the United States back to Mexico.

14.     Co-Conspirator 1 ("CC-1") was the leader of a California-based drug trafficking organization ("DTO") whose primary Mexico-based source of supply during the relevant time period for kilogram quantities of narcotics was VASQUEZ.  CC-1 was responsible for receiving the narcotics once they crossed the border from Mexico into the United States, storing the narcotics in stash locations, negotiating with U.S. based customers and arranging the sale of narcotics to various customers across the United States.  Additionally, CC-1 would arrange for the transportation of these narcotics to various cities throughout the United States to customers

4

(including by truck). CC-1 would collect the USC paid by customers in the United States for narcotics and, in coordination with VASQUEZ, arrange for part of that USC to be transported back to VASQUEZ in Mexico. Beginning in or around December 2019, VASQUEZ supplied CC-1 with kilogram quantities of cocaine, heroin, fentanyl, and methamphetamine.

15.    CC-1 had various downstream narcotics customers in the United States including the greater Washington, DC area. These customers included Co-Conspirator 2 ("CC-2"), Co-Conspirator 3 ("CC-3"), and Co-Conspirator 4 ("CC-4"). These customers obtained—via truck and U.S. mail—narcotics from the DTO which were supplied by VASQUEZ through CC-1 and their co-conspirators.

16.    Between January 2020 and June 2020, CC-1 sent large quantities of narcotics proceeds in the form of USC to VASQUEZ in Mexico to pay for narcotics that VASQUEZ supplied that were further distributed throughout the United States to several individuals including CC-2, CC-3, and CC-4.

17.    Beginning in the summer of 2020, CC-1 began arranging to sell CC-3 and CC-4 narcotics supplied by VASQUEZ.

ACTS IN FURTHERANCE OF THE CONSPIRACY

18.    In furtherance of the conspiracy and to bring about the objects and goals of the conspiracy, the defendant committed overt acts in the Eastern District of Virginia and elsewhere, including but not limited to the following:

19.    On February 25, 2020, CC-2 and another co-conspirator (also a customer of CC-1) received crates of cocaine in Loudoun County, Virginia where CC-2 was arrested in possession of approximately 25 kilograms of cocaine seized from cardboard boxes inside their vehicle. The other customer of CC-1's was also arrested in Maryland with approximately 21 kilograms of

cocaine and approximately one kilogram of heroin in his/her vehicle received in in this same shipment. This cocaine was supplied by VASQUEZ.

20.     On August 2, 2020, CC-3 flew from Washington Dulles International Airport, located in Loudoun County within the Eastern District of Virginia, to Los Angeles International Airport with the intention of transporting USC to California and purchasing narcotics from CC-1 with that currency.

21.     In September and October 2020, Vasquez and CC-1 engaged in telephone conversations concerning narcotics in Mexico destined for the United States and to customers including CC-3 and CC-4. On September 28, 2020, VASQUEZ and CC-1 had a telephone conversation during which they used coded language to discuss the transportation of narcotics originating in Mexico for distribution in the United States. VASQUEZ referred in one conversation to methamphetamine as "aguas," cocaine as "butakas" and "batteries," and fentanyl as "perfume." During the conversations, VASQUEZ and CC-1 discussed the crossing of narcotics from Mexico into the United States. CC-1 told VASQUEZ that the people from Washington, D.C. and Baltimore (CC-3 and CC-4) were waiting for narcotics. VASQUEZ explained that due to the COVID-19 pandemic, it had been difficult to find couriers who could cross the border from Mexico with narcotics due to restrictions in place.

22.     In early October 2020, VASQUEZ successfully arranged the transportation across the border from Mexico into the United States of kilogram quantities of fentanyl, cocaine, and methamphetamine.

23.     On October 9, 2020, a tractor-trailer carrying narcotics supplied by VASQUEZ and CC-1 stopped in Maryland where CC-3 and CC-4 were distributed quantities of the narcotics.

24.    On October 9, 2020, following the transaction, CC-3 was found in Maryland in possession of approximately one kilogram of a mixture and substance containing a detectable amount of heroin in their vehicle which had been supplied by VASQUEZ through CC-1.

25.    On October 9, 2020, following the transaction, CC-4 was located and a duffle bag belonging to CC-4 containing approximately eight kilograms of methamphetamine and over five kilograms of a mixture and substance containing a detectable amount of fentanyl supplied by VASQUEZ through CC-1 was seized.  The methamphetamine tested as approximately 97% pure.

(All in violation of Title 21, United States Code, Sections 841(a)(1) and 846.)

## COUNT TWO

*(Conspiracy to Distribute Controlled Substances Knowing, Intending or Having Reasonable Cause to Believe that they would be Unlawfully Imported into the United States)*

THE GRAND JURY FURTHER CHARGES THAT:

26.    The factual allegations contained in Paragraphs 1 through 10 and 12 through 25 are re-alleged and incorporated as if set forth here in their entirety.

27.    Beginning in and around at least December 2019 and continuing thereafter up to and including July 2021, the exact dates being unknown to the Grand Jury, within the jurisdiction of the United States and in an offense begun and committed outside the jurisdiction of a particular State or district, including in Mexico and elsewhere, the defendant DAVID FERNANDO VASQUEZ BEJARANO, a/k/a "ACELERADO," did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute:

  a.  One kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance,

b. Five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance,

c. 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1–(2–phenylethyl)–4-piperidinyl] propanamide, commonly referred to as fentanyl, a Schedule II controlled substance, and

d. 50 grams or more of methamphetamine (actual), a Schedule II controlled substance

intending, knowing, or having reasonable cause to believe that such substance would be unlawfully imported into the United States.

(All in violation of 21 U.S.C.§§§ 959(a), 960(a), and 963.)

## OBJECT OF THE CONSPIRACY

28.    The object of the conspiracy was to distribute heroin, cocaine, fentanyl and methamphetamine, intending, knowing, or having reasonable cause to believe that such controlled substances would be unlawfully imported into the United States from Mexico. The defendant and his co-conspirators used the following ways, manners, and means among others, to carry out this purpose:

## WAYS, MANNER, AND MEANS

29.    The allegations set forth in Paragraphs 12 through 17 are re-alleged and incorporated as if set forth here in their entirety to describe some of the ways, manner, and means of the conspiracy.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

30.     The allegations set forth in Paragraphs 18 through 25 are re-alleged and incorporated as if set forth here in their entirety to describe some of the acts taken in furtherance of the conspiracy.

(All in violation of 21 U.S.C. § 963.)

FORFEITURE NOTICE

The GRAND JURY HEREBY FINDS probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described:

Pursuant to Fed. R. Crim. P. 32.2(a), the defendant, DAVID FERNANDO VASQUEZ BEJARANO, a/k/a "ACELERADO," is hereby notified that if convicted of the controlled substances offenses alleged in Counts One and Two of the Indictment, the defendant shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a) and 970, the following: (1) any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation; and  (2) any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

Pursuant to Fed. R. Crim. P. 32.2(a), the defendant is hereby notified that if convicted of any of the violations set forth in this Indictment, they shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in or used in the commission of the offense.

Pursuant to 21 U.S.C. § 853(p), the defendant shall forfeit substitute property, if, by any act or omission of the defendant, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with 18 U.S.C. § 924(d)(1), 21 U.S.C. §§ 853 and 970,
28 U.S.C. § 2461(c); and Fed. R. Crim. P. 32.2(a).)

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
Foreperson

Jessica D. Aber
United States Attorney

By: _____
Michael P. Ben'Ary
Bibeane Metsch
Assistant United States Attorneys

11